UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOMESITE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>EMILY SCHLACKMAN, *et al.*,<br><br>Defendants. | Case No. C22-1106RSL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on plaintiff's unopposed "Motion for Summary Judgment" (Dkt. # 11). Having reviewed plaintiff's submissions and the remainder of the record, the Court grants plaintiff's motion for summary judgment for the reasons stated herein.

**I.   Background**

Plaintiff Homesite Insurance Company seeks declaratory judgment from this Court that it owes no duty to provide defense or indemnity coverage under a homeowners policy held by defendant Emily Schlackman with regard to a state court lawsuit arising out of sex trafficking allegations (the "Underlying Action"). Dkt. # 11 at 1.

**A. The Underlying Action**

The Underlying Action is a lawsuit brought by Ms. Shlackman's co-defendants in the instant case – Angelica Campbell, Amanda Branch, Megdalena Perez Hilts, Tessa Mortenson, and Nabila Haji-Ali – against non-party Solomon Simone, Ms. Schlackman, and others in King County Superior Court. *See* Dkt. # 1-1 (copy of complaint in *Angelica Campbell et al. v. Solomon Simone et al.*, King County Superior Court, Case No. 21-2-11125-1). The complaint

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1

alleges that Ms. Schlackman and others assisted Mr. Simone in operating a sophisticated human trafficking ring and drug distribution operation. The thrust of the lawsuit focuses on the misdeeds of Mr. Simone – specifically his scheme of "targeting young, vulnerable women," gaining their trust, "forc[ing] them into stripping, prostitution, and selling drugs," and "maintain[ing] control over the women with a variety of tactics that amount to force, fraud, and coercion." Dkt. # 1-1 at 9-11. However, Ms. Schlackman is identified as a "participant[] in the scheme." *Id.* at 11.[1] The Underlying Complaint alleges that:

> Defendant Schlackman assists with Defendant Simone's drug distribution operation. She distributes it to the women within Defendant Simone's organization and sells it at the street level, either while the women are working in strip clubs or prostituting. She has also assisted Defendant Simone in sheltering assets by holding real property in her name on his behalf.

*Id.* at 13.

### B. Claims Asserted Against Schlackman in Underlying Complaint

Per the Underlying Complaint, Ms. Campbell has asserted claims of (1) Outrage/Intentional Infliction of Emotional Distress; (2) violations of Washington's Criminal Profiteering Act, RCW § 9A.82; and (3) conspiracy against Ms. Schlackman. The factual basis for the charges is described in the Underlying Complaint:

> In mid-August, Defendant Simone visited the Shoreline property accompanied by Defendant Schlackman and told Ms. Campbell that she was obligated to begin making money again. He told Ms. Campbell matter-of-factly that she was going to help him sell cocaine.
>
> Defendant Simone explained that "Katie [Fulford] makes the shit," and that Defendant Schlackman would then deliver it to the various street-level dealers, including Defendant Adams. Cocaine was to be sold at a rate of $180 per gram. Defendant Simone told Ms. Campbell that her role would be to use her connections in the strip clubs to bring in new customers for Defendant Adams to sell to.

---

[1] Notably, the Underlying Complaint also states "[u]pon information and belief, Defendant Schlackman is another victim of Defendant Simone's criminal enterprise, though she presently lacks the ability to free herself." Dkt. # 1-1 at 59.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2

> Over the course of a month and a half, Defendant Schlackman would deliver new cocaine whenever Defendant Adams reported back to her that the prior batch had been sold. She would provide the new batch to Defendant Adams, who would turn over the money to Defendant Schlackman to deliver back to Defendant Simone. Once Defendant Adams had the cocaine in hand, he would press Ms. Campbell for contacts and customers to purchase it. This pattern repeated at least five times during that month and a half, and in that time, Ms. Campbell was able to secure approximately 12 new, regular purchasers for Defendant Adams and Defendant Simone.

*Id.* at 65. Ms. Schlackman is also included in Ms. Campbell's allegation that she "faces the ongoing presence of Defendant Simone and his entourage." *Id.* at 68. Specifically, members of Simone's "organization frequently show up in public places at which Ms. Campbell is socializing or working and watch her." *Id.*

Ms. Campbell alleges that this conduct supports a cause of action under the tort of outrage/intentional infliction of emotional distress because:

> Defendant Schlackman was complicit in the scheme to traffic Ms. Campbell by virtue of her having provided material support to Defendant Simone and running his drug manufacturing and distribution operation, as well as shielding certain assets by titling real property in her name. Defendant Schlackman further perpetuated his abusive conduct by harassing and stalking Ms. Campbell after she left Defendant Simone, threatening her via social media, and regularly appearing in public places to stalk her and monitor her activities in the months after she escaped. Defendant [Schlackman]'s[2] conduct was extreme and outrageous because she knew she was an accomplice to Defendant Simone in his trafficking of Ms. Campbell, and because her ongoing conduct after her escape only served to further traumatize Ms. Campbell.

*Id.* at 79.

---

[2] The Underlying Complaint refers to "Defendant Fulford" – another woman named as a defendant in the Underlying Action. *Id.* at 79. As defendant Fulford's actions constituting the tort of outrage are discussed elsewhere in the Underlying Complaint, *id.* at 78, the Court assumes this is a typo and that this full paragraph is meant to refer to Defendant Schlackman.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3

1    Ms. Campbell further alleges that this conduct constitutes a violation of the
2  Washington Criminal Profiteering Act, RCW § 9A.82, arguing that:

> Defendant Schlackman violated the WCPA by assisting Defendant Simone in the trafficking of Ms. Campbell with respect to the manufacture and sale of controlled substances. Defendant Schlackman was directly responsible for the distribution of the cocaine for which Ms. Campbell was forced to perform labor in the form of recruiting purchasers.

*Id.* at 83-84.

Finally, Ms. Campbell also alleges that this conduct constitutes participation in a civil conspiracy, as:

> Each of the named Defendants conspired with Defendant Simone in the unlawful purpose to traffic Ms. Campbell, force her into prostitution, force her into involuntary servitude, and unlawfully imprison her. The sum total of Ms. Campbell's ordeal would not have been possible without the coordinated unlawful agreement of the conspiring Defendants.

*Id.* at 84. Ms. Campbell alleges that as a result of this conduct, she has "suffered severe emotional and physical injury." *Id.* at 80, 84. Accordingly, Ms. Campbell seeks (1) "not less than one million dollars" in actual damages jointly and severally from the named defendants; (2) treble damages as authorized by the Washington Criminal Profiteering Act, RCW § 9A.82 *et seq.*; (3) reasonable attorney's fees and investigative fees as authorized by the Washington Criminal Profiteering Act, RCW § 9A.82 *et seq.*; (4) the costs of the Underlying Action; and (5) an order restraining defendants from engaging in any conduct prohibited by the Washington Criminal Profiteering Act, RCW § 9A.82 *et seq*. *Id.* at 84-85.

### C. Insurance Policy

At the time the Underlying Action was filed, Ms. Schlackman held a homeowner's insurance policy issued by plaintiff Homesite Insurance Company. Dkt. # 11 at 4. Included in the policy was personal liability coverage ("Coverage E") with a limit of $300,000. *Id.* The policy provides that:

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 4

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of payment for this coverage has been exhausted by payment of judgments or settlements.

Dkt. # 12-1 at 36. The Policy contains the following definitions:

> 11. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>      a. "Bodily injury"; or
>      b. "Property damage"
>
> 3. "Bodily injury" means bodily harm, sickness or disease, except a disease which is transmitted by an "insured" through sexual contact. "Bodily injury" includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.
>
> 12. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

*Id.* at 18-20.

### D. Policy Exclusions

The policy also contains a number of exclusions to the personal liability coverage, including:

> **1. Expected Or Intended Injury**
> "Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":
>      a. Is of a different kind, quality or degree than initially expected or intended; or

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 5

> b. Is sustained by a different person, entity or property than initially expected or intended.
>
> However, this Exclusion . . . does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;
>
> **2. "Business"**
>> a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured."
>
> This Exclusion . . . applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business" […]
>
> **6. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**
> "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; […]
>
> **7. Controlled Substance**
> "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs […]

Dkt. # 12-1 at 38-40.

### E. Form HA 01 46 WA 10/15

Additionally, Ms. Schlackman's policy was modified by an endorsement titled "Special Provisions – Washington," also listed as Form HA 01 46 WA 10/15. This Form amends the definition of "Business" in the policy to the following:

> 3. "Business" means:
>> a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
>> b. Any other activity engaged in for money or other compensation [. . .]

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6

*Id.* at 46. The Form also adds the following exclusions to the policy:

> **8. Criminal Acts**
> "Bodily injury" or "property damage" arising out of or in connection with a criminal act of any "insured".
>
> **9. Intentional and Malicious Acts**
> "Bodily injury" or "property damage" arising out an intentional and malicious act by or at the direction of any "insured".

*Id.*

### F.  Homesite's Duty to Defend

On July 29, 2022, Homesite sent a letter to Ms. Schlackman informing her that Homesite would agree to defend her in the Underlying Action subject to a full reservation of Homesite's coverage rights. Dkt. # 12-4. On August 8, 2022, Homesite filed the instant action, seeking declaratory judgment from this Court that it was not obligated to defend or indemnify Ms. Schlackman in the Underlying Action. Dkt. # 1. On February 2, 2023, Homesite filed the instant motion for summary judgment. Dkt. # 11. Neither Ms. Schlackman nor the other defendants in this lawsuit (claimants in the Underlying Action) have answered Homesite's complaint or responded to the motion for summary judgment.

### II.  Legal Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that establish the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c). Once the moving party satisfies its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The Court must "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014). Although the Court must reserve

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7

genuine issues regarding credibility, the weight of the evidence, and legitimate inferences for the trier of fact, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Even when a motion for summary judgment is unopposed, as here, the moving party retains its burden to demonstrate the absence of any issue of material fact. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 (9th Cir. 1994). District courts resolving unopposed summary judgment motions have an obligation to independently evaluate the sufficiency of the moving papers. *Id.* at 1496.

**A. Timing of the Motion**

As an initial matter, the Court notes that plaintiff's motion for summary judgment has been filed before defendants have filed their answers to the complaint and before the Court has issued a discovery order. Under Rule 56, "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). Accordingly, "[c]ourts and commentators have acknowledged that no answer need be filed before a . . . motion for summary judgment may be entertained." *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006) (quoting *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987)).

However, even where a motion for summary judgment is technically compliant with the Rule, "in many cases [a] motion [filed at the commencement of an action] will be premature until the nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had." Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendment. Accordingly, district courts have sometimes denied pre-answer and pre-discovery motions for summary judgment as premature, particularly where discovery is needed to resolve factual disputes. *See, e.g.*, *Williams v. Yuan Chen*, No. C10-1292CKD, 2011 WL 4354533, at *3 (E.D. Cal. Sept. 16, 2011) (denying the plaintiff's motion for summary judgment as premature where the defendant

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8

had not yet filed an answer and the court had not issued a discovery order); *Waters v. Experian Info. Solutions, Inc.*, No. C12-308AJB-RBB, 2012 WL 1965333, at *4 n.2 (S.D. Cal. May 31, 2012) (stating "[t]his Court typically finds pre-answer summary judgments premature and unhelpful"); *Moore v. Hubbard*, No. C06-2187FCD-EFB, 2009 WL 688897, at *1 (E.D. Cal. Mar. 13, 2009) (denying plaintiff's motion for summary judgment as premature where "discovery has not yet begun, defendants have not yet filed an answer and the court has yet to issue a discovery and scheduling order"); *Turner v. Cnty. of San Diego*, No. C14-2003JAH-JLB, 2016 WL 6804998, at * (S.D. Cal. Oct. 3, 2016) (same).

Here, the Court finds that although defendants have not yet answered plaintiff's complaint, and no discovery order has been issued by the Court, plaintiff's motion for summary judgment is not premature. Plaintiff asks the Court to enter a declaratory judgment "that it owes no duty to defend and/or indemnify Ms. Schlackman from the claims alleged in the Underlying Lawsuit." Dkt. # 1 at 15. To determine whether an insurer has a duty to defend, courts look to "the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn. 2d 793, 803 (2014). Thus, as plaintiff provides both the relevant insurance contract and underlying complaint with its motion, additional factual development through discovery is unnecessary to resolve the question raised in plaintiff's motion for summary judgment.

### III. Discussion

#### A. Duty to Defend

The duty to defend is broader than the duty to indemnify – "the duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn. 2d 43, 53 (2007). The duty to defend "arises at the time an action is first brought, and is based on the potential for liability." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn. 2d 751, 760 (2002). An insurer has a duty to defend "'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Id.* (quoting *Unigard Ins. Co. v. Leven*, 97 Wn.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9

App. 417, 425 (1999)).³ An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Id.* (citing *Kirk v. Mt. Airy Ins. Co.*, 134 Wn. 2d 558, 561 (1998)). Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." *Id.* (citing *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 295 (1980)). In sum, "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Edmonson v. Popchoi*, 172 Wn. 2d 272, 282 (2011) (citation and quotation marks omitted).

"[T]o determine whether the duty to defend exists, this court examines the policy's insuring provisions to see if the complaint's allegations are conceivably covered. If covered, this court must then determine whether an exclusion clearly and unambiguously applies to bar coverage." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn. 2d 55, 64 (2000). The interpretation of an insurance policy is an issue of law. *Schwindt v. Underwriters at Lloyd's of London*, 81 Wn. App. 293, 298 (1996). Generally, courts should "interpret insurance contracts as the average insurance purchaser would understand them," giving undefined terms their "plain, ordinary and popular meaning." *Allstate Insurance Company v. Raynor*, 143 Wn. 2d 469, 476 (2001) (citations and quotation marks omitted).

        **i.**  **Policy Coverage**

Here, Ms. Schlackman's policy provides personal liability coverage for suits "brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies." Dkt. # 12-1 at 36. There is no dispute that Ms. Schlackman is an "insured," nor does plaintiff raise an argument as to whether the Underlying Complaint alleges "bodily injury," *see* Dkt. # 1-1 at 80, 84 (Ms. Campbell's allegations that she

---

³ Washington courts have identified two exceptions to the rule that the duty to defend must be determined only from the complaint: (1) "if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend"; (2) "if the allegations in the complaint conflict with facts known to or readily ascertainable by the insurer, or if the allegations are ambiguous or inadequate, facts outside the complaint may be considered." *Woo*, 161 Wn. 2d at 53-54 (citations and quotation marks omitted). Neither exception is applicable here.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 10

1 has "suffered severe emotional and physical injury").[4] Thus, the relevant question for
2 determining plaintiff's duty to defend is whether the alleged "bodily injury" was caused by an
3 "occurrence."

4       Here, the Underlying Complaint alleges that Ms. Schlackman (1) supported non-party
5 Simone's activities by titling property in her name on his behalf, thus shielding certain assets;
6 (2) participated in non-party Simone's drug distribution scheme, in which Ms. Campbell was
7 forced to work; and (3) harassed and stalked Ms. Campbell via social media and in person.
8 Plaintiff argues that none of these actions can constitute an "occurrence." Specifically, plaintiff
9 argues that (1) the tort of outrage requires proof that the defendant acted intentionally or
10 recklessly; (2) the Washington Criminal Profiteering Act requires proof that the defendant acted
11 intentionally; and (3) to establish civil conspiracy against Ms. Schlackman, Ms. Campbell would
12 have to establish that she entered into an "agreement to establish the conspiracy," which would
13 require a showing of intent. Dkt. # 11 at 8-9, 15, 20. Plaintiff contends that because these actions
14 were intentional, they cannot constitute an "occurrence."

15       As an initial matter, the Court finds plaintiff's reliance on the elements of the claims
16 misplaced. These mens rea requirements outline what Ms. Campbell will have to prove to
17 succeed in her suit against Ms. Schlackman – they are not dispositive of the duty to defend. This
18 Court does not pass judgment on whether the facts alleged in the Underlying Complaint
19 sufficiently state a prima facie case. Instead, the relevant question for this Court is whether the
20 Underlying Complaint alleges facts that *if proven* could trigger the policy's coverage. Thus, the
21 Court focuses its inquiry on whether the alleged facts – not the alleged causes of action – could
22 conceivably be viewed as an occurrence.

---

[4] While not raised by plaintiff, the Court notes that it is uncertain whether Ms. Campbell suffered "bodily harm" as defined by the policy, given she does not clearly allege that any of Ms. Schlackman's actions resulted in physical harm to her. *See, e.g.*, *El-Moslimany*, 178 F. Supp. 3d at 1060-61 (finding no "bodily harm" where there was no allegation or evidence that insureds inflicted and claimant sustained actual physical harm); *Roberts*, 179 Wn. App. at 757-59 (same) (collecting cases). However, for the purposes of deciding this Order, the Court assumes that Ms. Campbell has alleged "bodily injury."

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11

1  "Occurrence" is specifically defined in the Policy as "an accident." Dkt. # 12-1 at 20. The policy does not define the term "accident." However, there is extensive Washington state case law interpreting the meaning of the word "accident" in insurance coverage disputes. *See, e.g.*, *Evans v. Metropolitan Life Ins. Co.*, 26 Wn. 2d 594 (1946); *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wn. App. 261, 263-64 (1978); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn. 2d 99, 104-05 (1988); *Cle Elum Bowl, Inc. v. N. Pac. Ins. Co.*, 96 Wn. App. 698, 703-05 (1999). For purposes of liability insurance, Washington courts have stated that "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn. 2d 383, 401 (1992) (citation omitted). An act is deliberate when it is "done with awareness of the implications or consequences of the act." *Nationwide Ins. Co. v. Hayles, Inc.*, 136 Wn. App. 531, 538 (2007). "All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable." *Lloyd v. First Farwest Life Ins. Co.*, 54 Wn. App. 299, 302 (1989). This inquiry involves an objective, not a subjective, determination. *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 198 (2014) (citing *Roller v. Stonewall Ins. Co.*, 115 Wn. 2d 679, 685 (1990)). In sum, "[i]ntentional, wrongful acts will not qualify as accidents or 'occurrences' if the results could have been expected from the acts." *Hayles*, 136 Wn. App. at 538 (citing *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn. 2d 901, 906 (1986)).

Here, there is no question that Ms. Schlackman's alleged conduct constituted intentional acts. As discussed above, the Underlying Complaint alleges that she (1) "was complicit in the scheme to traffic Ms. Campbell by . . . provid[ing] material support to Defendant Simone and running his drug manufacturing and distribution operation, as well as shielding certain assets by titling real property in her name" and (2) "further perpetrated [Defendant Simone's] abusive conduct by harassing and stalking Ms. Campbell after she left Defendant Simone." Dkt. # 1-1 at

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 12

79. Thus, the question turns on whether the results – Ms. Campbell's claimed physical and mental injuries – could have been reasonably expected from Ms. Schlackman's acts.

As to the allegations that Ms. Schlackman stalked and harassed Ms. Campbell, the Court finds that not only were these actions intentional, but a prudent person would conclude that the injurious consequences – Ms. Campbell's severe emotional distress – were reasonably foreseeable. Courts have consistently found that intentional harassment does not constitute an "occurrence" under similarly or identically worded policies. *See, e.g.*, *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 756-57 (2013); *State Farm Fire & Cas. Co. v. El-Moslimany*, 178 F. Supp. 3d 1048, 1055-56 (W.D. Wash. 2016). Here, the Court finds that the alleged stalking and harassment does not constitute an "occurrence" and accordingly does not trigger plaintiff's duty to defend.[5]

The Court also finds that it is "reasonably foreseeable" that actions taken to support a sex trafficking scheme would result in physical or mental injury to the victims of such trafficking. Here, the Underlying Complaint alleges that Ms. Schlackman was "complicit in the scheme to traffic Ms. Campbell" by, among other things "shielding certain [of Defendant Simone's] assets by titling real property in her name." Dkt. # 1-1 at 79. The Underlying Complaint further alleges that Ms. Schlackman "knew she was an accomplice to Defendant Simone in his trafficking of Ms. Campbell." *Id.* Thus, the Court finds that the allegations that Ms. Schlackman knowingly assisted in a sex trafficking scheme do not constitute an "occurrence" and accordingly do not trigger plaintiff's duty to defend.[6]

Finally, as to the allegations that Ms. Schlackman participated in the manufacture and sale of controlled substances, the Court finds it is possible that a prudent person would conclude that the injurious consequences alleged here (Ms. Campbell's claimed emotional and physical injuries) were not reasonably foreseeable. While Ms. Schlackman's alleged conduct – providing

---

[5] Because the Court finds that there is no duty to defend under the "occurrence" language in the policy, it need not reach plaintiff's alternative arguments.

[6] Because the Court finds that there is no duty to defend under the "occurrence" language in the policy, it need not reach plaintiff's alternative arguments.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13

1 cocaine for distribution – constitutes an intentional act, the Underlying Complaint does not
2 clearly allege that Ms. Schlackman was aware that Ms. Campbell was being forced to participate
3 in the drug trafficking scheme against her will. *Id.* at 65. The Underlying Complaint alleges that
4 "Defendant Schlackman would deliver new cocaine whenever Defendant Adams reported back
5 to her that the prior batch had been sold" and that in turn, Defendant Adams would give her
6 money made from prior cocaine sales, which she would then turn over to Defendant Simone. *Id.*
7 The Underlying Complaint further alleges that Defendant Adams "would press Ms. Campbell
8 for contacts and customers to purchase" the cocaine. *Id.* There is no indication that Ms.
9 Schlackman was aware of Ms. Campbell's involvement in selling the cocaine. *Id.* Thus, the
10 Court cannot say that the "result" – Ms. Campbell's claimed injuries – was the foreseeable or
11 expected result of Ms. Schlackman's alleged actions. It was not clearly foreseeable that Ms.
12 Schlackman providing the cocaine to Defendant Adams would result in Ms. Campbell being
13 forced to participate in the drug trafficking operation. Given we must construe insurance
14 contracts liberally in favor of a beneficiary, *see Queen City Farms, Inc. v. Cent'l Nat'l Ins. Co.*
15 *of Omaha*, 64 Wn. App. 838, 855, 866 (1992), the Court finds that plaintiff has not clearly
16 established the absence of an "occurrence" with regard to the Underlying Complaint's drug
17 trafficking allegations. *See Allstate Ins. Co. v. Jackson*, No. C09-1478RSM, 2010 WL 1849076,
18 at *4 (W.D. Wash. May 6, 2010) (finding where an insured high-schooler traded guns with his
19 classmate and the classmate later used the new gun to kill his step-brother, the case involved an
20 "accident" as there was no evidence that the insured "knew or should have known" that the gun
21 trade would result in the death of the classmate's step-brother); *State Farm Fire & Cas. Co. v.*
22 *Ham & Rye, L.L.C.*, 142 Wn. App. 6, 17 (2007) (finding where an insured and a friend
23 intentionally set fire to some newspapers on the sidewalk, and the fire unexpectedly spread to
24 and damaged nearby buildings, the incident was an "accident" because the court could not say
25 that the insured knew or should have known the fire would spread to the building); *see also*
26 *Fischer v. State Farm Fire & Cas. Co.*, 272 Fed. Appx. 608 (2008); *Queen City Farms, Inc. v.*
27 *Central Nat. Ins. Co. of Omaha*, 126 Wn. 2d 50, 66-70 (1994); *Hayles*, 136 Wn. App. at 536-38;
28 *Woo*, 161 Wn. 2d at 62-65.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 14

### ii. Exclusions

Having concluded that Ms. Schlackman is conceivably covered under the inclusionary language in the Homesite policy with regard to the allegations stemming from her participation in the drug trafficking operation, the Court now considers whether any of the policy exclusions extinguish plaintiff's duty to defend. Exclusions from insurance coverage "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning." *Stuart v. Am. States Ins. Co.*, 134 Wn. 2d 814, 818-19 (1998). Exclusionary clauses are construed strictly against the insurer. *Queen City Farms*, 126 Wn. 2d at 74.

Here, the Court finds that the claims related to Ms. Schlackman's participation in the drug trafficking scheme are excluded by the policy's "Controlled Substance" exclusion. The "Controlled Substance" exclusion excludes personal liability coverage for a "bodily injury" "arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance." Dkt. # 12-1 at 38-40. Cocaine is specified as controlled substance under the policy. *Id.* Here, Ms. Campbell alleges that Ms. Schlackman's participation in the manufacture, transfer and sale of cocaine caused Ms. Campbell's physical and mental injuries. Thus, the claim falls squarely under the exclusionary clause, and plaintiff has no duty to defend.[7]

### B. Duty to Indemnify

While the duty to defend "exists merely if the complaint contains any factual allegations which could render the insurer liable to the insured under the policy," the duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden*, 141 Wn. 2d at 64. Stated differently, "the duty to indemnify exists only if an insurance policy actually covers a claim." *Xia v. ProBuilders Speciality Ins. Co.*, 188 Wn. 2d 171, 182 (2017). Here, the Court has determined that the claims alleged in the Underlying Complaint are

---

[7] Because the Court finds that there is no duty to defend under the "Controlled Substances" exclusion, it need not reach plaintiff's alternative arguments.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 15

"clearly not covered by the policy." *Truck Ins. Exch.*, 147 Wn. 2d at 760 (citation omitted). Thus, plaintiff does not have a duty to indemnify.

### IV. Conclusion

For all the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 11) is GRANTED. Plaintiff establishes it has no duty to defend or indemnify Emily Schlakman in the matter of *Angelica Campbell et al. v. Solomon Simone et al.,* King County Superior Court, Case No. 21-2-11125-1. The Court will enter judgment declaring State Farm has no duty to defend.

IT IS SO ORDERED.

DATED this 1st day of May, 2023.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 16